Laramore, Judge,
dissenting:
I believe plaintiff should be denied drawbacks for the periods herein claimed on the ground that it has failed to fully comply with the regulations as prescribed by the Commissioner of Internal Kevenue.
Treasury Regulation 29-197.23 provides:
Information to be shown by the claim. The claim must set forth, under oath, the following :
(a) ***
(b)***
(c) ***
(d) That the nonbeverage products were manufactured in compliance with (1) quantitative formulas filed with the Commissioner on Form 1678 prior to or at the time of manufacture, or (2) formulas prescribed by the United States Pharmacopoeia, the National Formu-lary, or the American Institute of Homeopathy.
*659 (e) That the data submitted in support of the claim are correct.
The claims as filed by the plaintiff did not comply with subsections (d) and (e) of the above-quoted regulation. Subsection (d) requires that the “products” manufactured be in compliance with the formulas submitted. Some of the “products” for which plaintiff claims a drawback did in fact comply with the regulation, but I read subsection (d) as requiring that all of the “products” which the particular claim covers must have been manufactured in compliance with an approved formula. To hold otherwise would be to encourage the filing of false and fraudulent claims. Also subsection (e) requires that the data submitted in support of the claim be correct. I do not think that plaintiff complied with this requirement when it failed to disclose the use of isopropanol in some of the products for which a drawback was claimed.
A drawback is a privilege or benefit bestowed by the Government upon those using taxable alcohol for non-beverage purposes. As such, the right to this privilege or benefit should be construed against the applicant therefor and in favor of the Government, United States v. Walker Hill, 79 F. Supp. 482. I would, therefore, hold that plaintiff is not entitled to recover for failure to fully comply with the regulations.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes findings of fact as follows:
1. This action arises under section 8250 (1) of the 1939 Internal Revenue Code which provides for a drawback of $6 per proof gallon on fully tax-paid alcohol used in the manufacture or production of flavors or flavoring extracts which are unfit for beverage purposes.
2. Plaintiff, S. Twitchell Company, is a domestic corporation, organized under the laws of the State of New Jersey, with its registered office in Camden, New Jersey.
3. The plaintiff was, during all times hereinafter mentioned, engaged in the manufacture, production and sale of *660 flavoring extracts. The extracts were sold under various trade names.
4. The plaintiff used tax-paid alcohol in the manufacture of flavoring extracts. The alcohol on which the present claim is based was purchased by the plaintiff from Commercial Solvents Corporation, Publicker Industries, Inc., and U. S. Industrial Chemicals, Inc.
5. The flavoring extracts manufactured by the plaintiff were at all times unfit for beverage purposes within the meaning of Section 3250 (1) of the Internal Eevenue Code of 1939 and its amendments.
6. The special tax of $100 per annum for total withdrawals of 50 proof gallons of alcohol, as required by Section 3250 (1), was paid by plaintiff on June 23, 1950, to the collector of internal revenue for the first district of New Jersey, for the fiscal year ending June 30, 1951.
7. On or about April 5, 1951, the plaintiff filed with the collector of internal revenue for the first district of New Jersey a claim for refund of $10,136.40 as a drawback at the rate of $6 per gallon on 1,689.4 proof gallons of alcohol used in the manufacture of flavoring extracts for the period January 1,1951, to March 31,1951, inclusive.
8. On or about July 9,1951, the plaintiff filed with the collector of internal revenue for the first district of New Jersey a claim for refund of $14,127 as a drawback at the rate of $6 per gallon on 2,354.5 proof gallons of alcohol used in the manufacture of flavoring extracts for the period April 1, 1951, to June 30, 1951, inclusive.
9. On or about November 13, 1951, the Commissioner of Internal Eevenue rejected both claims for drawback in their entirety for the reason, inter alia, that the plaintiff had used isopropyl alcohol without the sanction of the Commissioner.
10. By reason of the rejection of the drawback claims, plaintiff’s cost of raw materials was raised to more than the selling price of all drawback products manufactured by it during the six months’ period January 1, 1951, to June 30, 1951, inclusive, which resulted in a loss to plaintiff of an amount equal to 22 percent of its net current assets as of December 31,1951.
*661 11. At the trial of the case the plaintiff withdrew claims in the aggregate amount of $8,102.15, that is, the sum of $1,692.75 under paragraph 17 (1) of the petition and $1,-409.40 under paragraph 18 (1), covering drawbacks claimed on these products in which the plaintiff used isopropyl alcohol as a solvent in its manufacturing process, leaving the amount of $21,161.25 in controversy.
12. Pursuant to the applicable regulations of the Internal Revenue Service, plaintiff had filed with the Commissioner quantitative formulae with respect to the products for which a drawback was claimed. A quantitative formula is one which describes the product and sets forth the amount of each ingredient in the formula.
13. Sometimes a formula is regarded as a trade secret and when such a representation is made defendant will, in a proper case, accept a sample of the product in lieu of the formula. If, on the basis of examination, the product is considered to be acceptable for a drawback, the sample would be approved. Plaintiff did not represent to the Commissioner that its formula was a trade secret nor did it request an exception from submission of a formula.
14. Isopropyl alcohol, or isopropanol as it is also known, is tax free. It is generally produced synthetically and is not considered an alcohol which is suitable for beverage purposes and its use is not encouraged by the Food and Drug Administration, although not prohibited. Ethyl alcohol, which is taxable, is obtained by fermentation of a number of products which contain sugar and is approved for beverage purposes. Permissive use of isopropyl alcohol in the manufacture of flavoring extracts varies from country to country. For instance, its use is sanctioned in Great Britain, but not in West Germany.
15. Formulae, calling for the use of isopropanol in finished nonbeverage products, will not be approved by the Commissioner of Internal Revenue. Its use in the finished product is not sanctioned for the principal reason that it would be conducive to fraud. Although there is a laboratory test for it, a manufacturer could use a mixture of ethyl alcohol and isopropyl alcohol and the chemical analysis would not pick it up unless defendant was especially looking for iso- *662 propyl alcohol. Taxable alcohol could be diverted by use of the nontaxable type and a drawback claimed when actually nontaxable isopropanol had been used. There is no diversion alleged or shown in this case. Isopropanol was also less expensive than ethyl alcohol as well as tax free. Even after the allowance of a drawback on ethyl, a tax was still applicable on it.
16. The use of various ingredients in plaintiff’s manufactured products on which a drawback was claimed did not appear on the approved formulae. One of these ingredients was isopropanol which, however, was shown on a secret master formula, together with all other ingredients used and the process or procedure of manufacture.
17. For the quarter beginning January 1,1951, and ending March 31, 1951, the products manufactured by plaintiff, on which the balance of this claim is based, were as shown on the following schedule, which includes the total wine gallons of each product manufactured, total wine gallons of isopropyl alcohol used, if any, and total wine gallons of tax-paid alcohol used, together with the drawback allocable to each respective class of products. A wine gallon is 1.9 proof gallons.

Products in which Isopropyl Alcohol was added after manufacture and before shipping, to prevent cloudiness

*663
Products m wMch no Isopropyl Alcohol was used either during or after manufacture

18. For the quarter beginning April 1, 1951, and ending June 30,1951, the said products manufactured by plaintiff in the same categories as above were as follows:

Products in which Isopropyl Alcohol was added after manufacture and before shipping, to prevent cloudiness

Products in which no Isopropyl Alcohol was used either during or after manufacture

*664 19. For each, batch of its product, plaintiff prepared a white batch card showing the actual ingredients used, including isopropanol, and the source of supply. On some of the white batch cards the ingredients were listed specifically, while on others it was simply noted that the batch was the same as the previous one. The results of the batch were also noted. The employees of the plaintiff were instructed not to show the white batch cards to representatives of the Internal Eevenue Service.
20. Sometime in 1950, plaintiff commenced to keep a set of blue batch cards. These cards were records of batches that had been made in accordance with the formulae filed with the Internal Eevenue Service. These batch cards merely stated the ingredients of the product, as they appeared on the formulae filed with the Government, and listed some but not all ingredients used, either specifically or under a general classification, except isopropanol.
21. As a result of a report from the Philadelphia laboratory of the Internal Eevenue Service, showing amounts of alcohol in the plaintiff’s products in excess of that shown on the formulae filed with the Commissioner, the plaintiff was asked for an explanation of the excess alcohol.
22. The plaintiff replied on December 1, 1950, in part:
The analysis of the alcohol present in the finished products should be the same with allowance made for experimental error. However, it is true that other ingredients which are not disclosed in the formulae might affect the laboratory analysis as usually followed and we assume that this is probably the answer.
These formulae were submitted some years ago on a skeleton formula basis and include only alcohol, water and the essential oils used. In other words the formulae were complete only in so far as the alcohol and the necessary denaturing ingredients and the total yield were concerned.
Since no question has ever arisen concerning the completeness of these formulae we have had no occasion to believe they were not acceptable.
We will await further instructions from you as to what we should do under the circumstances to secure favorable action on our drawback claim in question.
*665 And on December 13, 1950, plaintiff wrote to the defendant in part as follows:
The facts are that the formulae are correct in the amount of alcohol used and the yield obtained and it is also true that no additions of alcoholic extracts have been made which should be entered in part 3 of the claim for drawback.
The explanation of why the alcohol analysis apparently shows a high result is as follows. There is some isopropanol present in the formulae in question which comes about through a special cold process method of concentrating essential oils which we believe is exclusive with us.
In other words the isopropanol present is carried over in the distillation and affects the analytical determination of alcohol.
23. In response to these communications, a letter dated December 29,1950, was addressed to the plaintiff by defendant, reading as follows:
It is noted that your explanation of the alcoholic discrepancy of the samples of Formulas 1, 2 and 5 analyzed in the field is apparently due to the isopropanol which is used in the process of concentrating the essential oils, being carried over in the distillation process and remaining in the finished product. The formulas, Form 1678, do not show the use of isopropanol or the use of distillation in the process.
This office does not sanction the use of ethyl alcohol and isopropyl alcohol in flavoring extracts or other products eligible under Regulations 29, whereby the latter named alcohol remains in the finished product.
Accordingly, you should discontinue the manufacture of Formulas 1, 2 and 5 and such other formulas which contain isopropanol in the finished product. Revised formulas on Form 1678 in triplicate may be submitted for those preparations and indication made thereon that the finished product does not contain isopropyl alcohol.
24. As a result of this exchange of correspondence, new formulae were filed by the plaintiff. Some were identical with the old formulae with respect to ingredients, but varied in the amount of alcohol used. This was caused by the elimination of the use of isopropanol. In the case of other products, no new formulae were filed, but supplementary formu- *666 lae were filed showing that tax-paid alcohol was added to prevent cloudiness.
25. The drawback claims filed by the plaintiff for the period July 1 through December 31, 1950, were allowed because of the Commissioner’s feeling that an honest mistake had been made in the use of isopropanol.
26. Inspectors who called on plaintiff to investigate its drawback claims in 1950 and 1951 were not shown any batch cards except the blue ones until July of the latter year. At that time an investigation was made of plaintiff’s use of iso-propanol. From the records maintained by plaintiff it was not possible to reconcile the amount shown to have been purchased and used with the amount on hand. The records on ethyl alcohol balanced out correctly.
27. On July 9, 1951, M. J. Hess, the vice president and general manager of the plaintiff, invited defendant’s inspectors, Mr. Demarest and Mr. Kendall, into his private office and stated that overnight he had decided to become frank with them and that plaintiff’s employees had been furnishing the inspectors false information under instructions from him. He further stated that plaintiff had been using isopropanol in its products and was still using it to prevent them from becoming turbid due to weather changes. The reason Mr. Hess gave for the deception was that he felt that “it was none of our [the Government’s] damn business.” He further promised to set up an isopropanol accounting from the plaintiff’s original batch records.
28. During the spring of 1951, Mr. Hess had stated to a representative of the Commissioner that isopropanol was definitely not being used any longer and that if samples showed the presence of isopropanol they must have been from batches made before the formulae were changed.
29. Mr. Hess and D. C. Stewart, the office manager and treasurer of plaintiff, set up their own isopropanol accounting for the period January 1 through June 30, 1951. This accounting was set up from a set of white batch cards. This was the first time the inspectors knew of the existence of the white batch cards.
30. Prior to plaintiff’s admission on July 9,1951, plaintiff had followed a policy of concealing its use of isopropanol *667 from defendant’s agents. Plaintiff felt that its use of isopro-panol to prevent cloudiness in its products was a valuable secret of the trade and was apprehensive that some inspector might reveal it. Special samples not containing isopropanol were provided the alcohol tax inspectors. Blue batch cards containing no reference to isopropanol were shown the inspectors. When inspectors entered, the plant precautions were taken to make the isopropanol difficult to find. Labels on plaintiff’s finished product gave no indication that it contained isopropanol.
31. To the extent shown in findings 17 and 18, the products, on which drawbacks of tax are claimed in this case, were manufactured in accordance with formulae filed with and approved by the Commission. The drawbacks claimed on these products total $5,705.94. With respect to the products shown in those same findings for which a total drawback of $15,455.31 is claimed, isopropanol having been added to prevent cloudiness after the manufacture and before shipment, plaintiff was on notice when it submitted the claims that a drawback of tax is not allowable when isopropanol remains in the finished product. There was no way in which the defendant could tell, by examination of the drawback claims and supporting data, the extent to which the claims were based on products manufactured according to plaintiff’s approved formula and the extent to which they were in violation thereof and in conflict with defendant’s notice to plaintiff as set forth in finding 23.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to drawbacks for those products in which isopropyl alcohol was used. Plaintiff is entitled to recover to the extent that the claimed drawbacks are for products in which isopropyl alcohol was not used. It is therefore adjudged and ordered that the plaintiff recover of and from the United States $388.14 for the period January 1,1951, to March 31,1951, inclusive, and $5,317.80 for the period April 1, 1951, to June 30, 1951, inclusive, without interest.